UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JESSE RYAN ROGSTAD,<br><br>    Plaintiff,<br><br>vs.<br><br>LIEUTENANT JOSH OVERGAARD,<br><br>    Defendant. | Case No.: 1:19-cv-00176-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 12)** |

Pending is Defendant's Motion for Summary Judgment (Dkt. 12). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

Plaintiff, a prison inmate incarcerated at the Idaho Maximum Security Institution, brought this 42 U.S.C. § 1983 action pro se against Defendant, Lieutenant Overgaard, an Idaho Department of Correction ("IDOC") employee. Compl. 1–2 (Dkt. 3). Plaintiff alleges that sometime in "spring 2018," Defendant entered Plaintiff's cell around 3 a.m. and "pushed [Plaintiff] against the wall and bed," causing injuries and scarring to the back of Plaintiff's head. Compl. 2. On initial review, the Court allowed Plaintiff's claim to proceed. Initial Review Order 3–4 (Dkt. 7). The Court stated that "though sparse," the Complaint sufficiently alleged that Plaintiff's rights were violated by Defendant's use of excessive force. *Id.* at 1, 3.

Defendant contends that the only physical encounter he had with Plaintiff in 2018 occurred on July 13, 2018, at approximately 3:48 a.m. Def.'s Mem. ISO MSJ 2 (Dkt. 12-1); Overgaard Decl. ¶ 11 (Dkt. 12-2). Defendant prepared a "Use of Force Individual Report" in response to the July 13 encounter. Overgaard Decl. Ex. A (Dkt. 12-3).

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MSJ – 1**

Defendant moves for summary judgment, arguing that Plaintiff failed "to exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a) and Idaho Code § 19-4206(1)." Def.'s MSJ 1 (Dkt. 12). In support of his motion, Defendant argues that Plaintiff did not even begin, let alone exhaust, IDOC's three-step administrative grievance process for incidents such as described in the Complaint. Def.'s Mem. ISO MSJ 3, 5. Defendant contends there is no doubt that Plaintiff was aware of the administrative process, as he has used it ten times. *Id.* at 8–9; Young Decl. Exs. B, C (Dkts. 12-6, 12-7). However, none of those ten grievances, according to Defendant, applies to the incident described in Plaintiffs' Complaint because the grievances were factually unrelated or were not submitted within 30 days after the incident, as IDOC's policy requires. Def.'s Mem. ISO MSJ 8–9. Therefore, Defendant contends "it is undisputed Plaintiff failed to exhaust his administrative remedies" related to the incident and his claims must be dismissed. *Id.* at 8–9. Plaintiff did not respond to Defendant's Motion and the time to do so has passed. *See* Dist. Idaho Loc. Civ. R. 7.1.

## **LEGAL STANDARD**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The court must view reasonable inferences drawn from the record in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). In deciding a motion for summary judgment, the court "may not weigh the evidence or make credibility determinations." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party seeking summary judgment always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). Where the moving party carries its burden of production, then the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Doing so requires more than a simple showing that "there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. Instead, the nonmovant must "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the court is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmovant fails to produce evidence that supports its claim or defense, the court must enter summary judgment in favor of the movant. *See Celotex*, 477 U.S. at 323.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), when a correctional institution makes administrative remedies available to prisoners, an aggrieved prisoner must exhaust such remedies before suing under § 1983. 42 U.S.C. § 1997e(a); *see also* Idaho Code § 19-4206(1). A failure to exhaust such remedies creates only an affirmative defense the defendant must plead and prove, rather than a prima facie element of the § 1983 claim, because "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Hence, if the evidence is undisputed even when viewed most favorably to the plaintiff,

the defendant is entitled to summary judgment if the plaintiff failed to exhaust administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

Accordingly, the analysis focuses upon the existence of an available administrative remedy and whether the prisoner exhausted that available remedy. *Id.* at 1172. In turn, the question of exhaustion turns upon the policies and procedures of the specific prison system in which the plaintiff is incarcerated, and thus can vary from one prison to another. *Jones*, 549 U.S. at 218; *Woodford v. Ngo*, 548 U.S. 81, 88–91 (2007). If the defendant puts on proof of such an available remedy and the failure of the plaintiff to utilize that remedy, then the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

When the nonmoving party does not properly address another party's assertion of fact, the court may "consider the uncontested material facts as undisputed." Dist. Idaho Loc. Civ. R. 7.1(e)(2). "[I]f the motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to the granting of the motion," then the court may properly grant summary judgment. *Id.*; *see also* Fed. R. Civ. P. 56(c), (e). "However . . . the ultimate burden of proof remains with the defendant" when that defendant is seeking summary judgment in the PLRA context. *Albino*, 747 F.3d at 1172 (citing *Jones*, 549 U.S. 199).

Here, the record evidence shows that IDOC has implemented a three-step administrative process that is outlined in Standard Operating Procedure 316.02.01.001 ("SOP"). Young. Decl. Ex. A (Dkt. 12-5). The SOP was in place at the time of the incident alleged by Plaintiff in the Complaint. All grievances are logged and retained in a record-keeping system, regardless of the subsequent action taken, or the lack thereof. Def's Mem. ISO MSJ at 4. The SOP includes

template forms to be used by inmates and IDOC personnel, as well as an informational handout for inmates that summarizes the SOP's guidelines. Young. Decl. Ex. A, at 21–25.

Under the SOP, the first of the three steps requires the inmate to submit a grievance on a "concern" form document to the appropriate IDOC staff member. Def.'s Mem. ISO MSJ 3. If that informal step does not resolve the grievance, a formal grievance form may be filed within 30 days after the incident on which the grievance is based. *Id.* After the IDOC Grievance Coordinator confirms the paperwork is completed properly, the grievance is entered into the record-keeping system and assigned to an appropriate IDOC staff member for response. *Id.* The staff member's response is also logged and reviewed by an appropriate authority before being transmitted back to the inmate. *Id.* at 4. If the inmate is not satisfied with that response, the final step in the administrative process is to file a grievance appeal, which the Grievance Coordinator logs into the record-keeping system and then forwards to the appellate authority, generally the warden. *Id.* The appellate authority's response is then logged and transmitted back to the inmate. *Id.* at 4. The administrative grievance process is exhausted upon completion of these steps. *Id.*

The version of the SOP which Defendant has placed in the record is dated November 7, 2018, many months after the date on which Plaintiff alleges the incident occurred (spring 2018) and many months after the Defendant claims the incident occurred (July 13, 2018). However, Plaintiff has not contended that the SOP dated November 7, 2018 is different than the SOP that was in effect at the time of the alleged incident. Further, the SOP in the record references that it was originally adopted September 1, 1995, indicating that an administrative grievance process was in place throughout 2018. *Id.* Moreover, the template forms and the informational handout appended to the November 2018 SOP were last updated on June 4, 2018 – a date that would still be within the "spring 2018" timeframe in which Plaintiff alleges the incident occurred, and more

than a month before the date identified by Defendant. *Id.* at 21–25.

Hence, the record contains no genuine dispute as to the fact that there was an administrative grievance process in place at the time of the incident. Plaintiff has not disputed that the SOP, requiring that he follow such a grievance procedure, applies to the facts of the instant case. Further, Plaintiff was aware of the administrative process and used that process to file grievances both before and after the alleged date of the incident. *Id.* at 8–9; Young Decl. Exs. B, C. Defendant argues that none of Plaintiff's ten grievances could apply to the incident at issue because they were either factually unrelated or were not properly submitted within 30 days after the incident, as required by the SOP. Def.'s Mem. ISO MSJ 8–9. Plaintiff has not contested Defendant's characterization of the grievances filed by Plaintiff over time, particularly as to Defendant's contention that none of those grievances was specific to the incident complained of by Plaintiff in this case.

The record does contain a grievance dated April 23, 2018, in which the Plaintiff complained of "malpractice" and wanting "someone to call 911." Young Decl. Ex. B.[1] IDOC did not follow up on this grievance because IDOC contends that Plaintiff submitted it on the wrong form and did not provide names of those involved or any dates on which something had occurred. *Id.* Plaintiff did not submit a different or revised form with additional information, nor otherwise seek to correct the alleged shortcomings or seek to appeal IDOC's decision to not take

---

[1] There may be a genuine dispute as to whether the incident described in Plaintiff's Complaint occurred on April 23, 2018, the date noted with respect to this grievance, or on July 13, 2018, as Defendant contends. But it is not clear whether the April 23 grievance even relates to the incident underlying Plaintiff's Complaint. Regardless, even if Plaintiff initiated the administrative process with respect to the incident at issue, the undisputed record evidence shows that he did not exhaust that process. Therefore, the date of the incident is not material because the undisputed record evidence establishes a lack of exhaustion as to potential grievances arising out of events on either day.

action. *Id.* Therefore, even if the April 23, 2018 grievance stemmed from the incident sued upon here, Plaintiff did not exhaust the administrative process after filing the grievance.

The record contains additional materials which further support this conclusion, to include a declaration by Tara Young, the IDOC Grievance Coordinator at the Idaho Maximum Security Institution. Young Decl. ¶ 2 (Dkt. 12-4). Ms. Young attaches to her declaration a copy of Plaintiff's "Offender Grievance Listing," which lists ten grievances filed by Plaintiff. *Id.* at ¶ 13; Young Decl. Ex. B (Dkt. 12-6). Nine of the ten grievances were returned without action at level one of the administrative process. *Id.* Nothing further was done by Plaintiff after the initial grievance was filed; hence, there is no dispute that these grievances were not exhausted. The tenth grievance, which was exhausted, is not related to the incident at issue here.

Plaintiff's Complaint alleges that he exhausted his rights in the grievance system, but it provides no description of what steps he took to do so, despite pre-printed instructions on the complaint form to "briefly explain the steps taken to exhaust." Compl. 2. His conclusory allegation that he exhausted the grievance process may be sufficient to assert an element of his claim, but it does not, without more, preclude summary judgment against him when the Defendant has produced evidence that Plaintiff did not exhaust the grievance process. Plaintiff had an opportunity to respond to and meet such evidence, but he did not. Thus, the undisputed record evidence shows that Plaintiff did not exhaust the grievance process with respect to any grievance relating to the alleged incident. Nor did he offer any evidence or argument that the grievance process was effectively unavailable to him.

Accordingly, Defendant has presented a prima facie affirmative defense that IDOC has an administrative grievance process in place and that Plaintiff failed to exhaust that process with respect to the underlying incident. Plaintiff has not rebutted Defendant's affirmative defense of

exhaustion. Therefore, Defendant is entitled to summary judgment.

## **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. 12) is GRANTED. Plaintiff's claim against Defendant is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is directed to close the case.

DATED: December 12, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge